ISAAC EDUARDO SOSA-VASQUEZ,

Petitioner,

v.

DALE J. SCHMIDT, SAM OLSON,
DAVID VENTURELLA,
MARKWAYNE MULLIN, and TODD
BLANCHE,

Respondents.

Case No. 26-CV-600-JPS

**ORDER**

## 1. INTRODUCTION

Isaac Eduardo Sosa-Vasquez ("Petitioner"), a Venezuelan national, arrived in the United States in October 2021. ECF No. 1. On March 10, 2026, Immigration and Customs Enforcement ("ICE") arrested Petitioner during a routine check-in. *Id.* at 2. Since then, Sosa-Vasquez has been detained without a bond hearing at Dodge Detention Facility in Wisconsin, where Respondent Dale J. Schmidt ("Schmidt") serves as his physical custodian. *Id.* at 5. Petitioner also names as respondents Sam Olson, Director of the ICE Field Office in Chicago; Todd M. Lyons, Acting Director of ICE;[1] Markwayne Mullin, Secretary of the Department of Homeland Security ("DHS"); and Todd Blanche, Acting Attorney General (together "Federal Respondents"). *Id.* at 5–6.

---

[1] The Court will instruct the Clerk of Court to substitute David Venturella, who is now the Acting Director of ICE, for Todd M. Lyons, who was the Acting Director of ICE when Petitioner filed this petition. *See* FED. R. CIV. P. 25(d).

On April 9, 2026, Petitioner filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. *Id*. at 4. Federal Respondents purport to detain Petitioner under 8 U.S.C. § 1225(b)(2)(A), which mandates detention. *See* ECF No. 9 at 6–9. Petitioner contends that 8 U.S.C. § 1226 applies to him instead, entitling him to a bond hearing. Petitioner argues that his detention violates the Immigration and Nationality Act, 8 U.S.C. §§ 1101 et seq. ("INA") and his right to due process. ECF No. 1 at 13–20.

The Court previously screened the petition pursuant to Rule 4 of the Rules Governing Section 2254 Cases.[2] ECF No. 4. Federal Respondents answered the petition, ECF No. 7, and Petitioner submitted a reply,[3] ECF No. 8. Federal Respondents then submitted a brief in opposition to the petition, ECF No. 9, which Schmidt joined.[4] *Id*. at 1 n.1. For the reasons stated below, Petitioner is not entitled to the relief he seeks. The Court will therefore deny the petition's statutory claims with prejudice. The Court will deny the petition's due process claim without prejudice to the extent that Petitioner may have a due process claim materialize in the future related to his current detention.

---

[2]The Rules also apply to § 2241 petitions. Rule 1(b) of the Rules Governing § 2554 Cases in the United States District Courts; E.D. WIS. CIV. L.R. 9(a)(2).

[3]Petitioner filed his reply early and waived further submissions. ECF No. 8 at 6.

[4]For the reasons discussed in the Court's screening order, ECF No. 4 at 5, the Court is skeptical that Federal Respondents are appropriately sued. *See* 28 U.S.C. § 2243 ("The writ, or order to show cause shall be directed to the person having custody of the person detained."); *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004). Because Federal Respondents did not brief the issue, however, the Court will not discuss this issue further. *See* ECF No. 9.

## 2. FACTUAL AND PROCEDURAL BACKGROUND

The Court draws the following recitation of facts from the petition and exhibits attached thereto.[5] ECF Nos. 1, 1-2, 1-3, 1-4.[6] The Court provides additional legal context where necessary.

Petitioner, a citizen of Venezuela, arrived in the United States on October 4, 2021. ECF No. 1 at 1. He was arrested, briefly detained by DHS, and released on an Order of Recognizance (Form I-220A) on October 8, 2021. *Id.*; ECF No. 1-2 at 2. This form indicated that Petitioner had been placed in removal proceedings and would be released on his own recognizance "in accordance with section 236 of the [INA] and the applicable provisions of Title 8 of the Code of Federal Regulations." ECF No. 1-2 at 2 (Section 236 of the INA is codified at 8 U.S.C. § 1226). Petitioner filed an asylum application on October 8, 2022, which remains pending. ECF No. 1 at 2. Petitioner received Temporary Protective Status for Venezuela in 2023.[7] *Id.*

---

[5]For brevity, citations to facts within this section are omitted in later analysis.

[6]Federal Respondents claim they attached a copy of the administrative record of Petitioner's removal proceedings to their answer. ECF No. 7 at 12. However, Federal Respondents' filing contains no exhibits. *See id.*

[7]The Attorney General may grant foreign nationals Temporary Protective Status, preventing removal to a foreign state where "there exist extraordinary and temporary conditions in the foreign state that prevent aliens who are nationals of the state from returning to the state in safety." 8 U.S.C. § 1254a(b)(1)(C). The administration terminated Temporary Protective Status for Venezuela in 2025. *See* U.S. Citizenship and Immigration Services, *Temporary Protected Status Designated Country: Venezuela*, https://www.uscis.gov/humanitarian/temporary-protected-status/temporary-protected-status-designated-country-venezuela [https://perma.cc/6STB-77ZB] (last visited June 16, 2026).

In 2026, Petitioner resided in Sun Prairie, Wisconsin. *Id.* at 17. On March 10, 2026, ICE arrested Petitioner during a routine check-in. *Id. See* ECF No. 1-3. The arrest warrant was addressed to "[a]ny immigration officer authorized pursuant to sections 236 and 287 of the [INA] and part 287 of title 8, Code of Federal Regulations, to serve warrants of arrest for immigration violations." ECF No. 1-3 at 2. ICE issued a Notice to Appear that charges Petitioner with being present in the United States without being admitted or paroled. ECF No. 1 at 2, 8; ECF No. 1-4 at 2. Petitioner has been detained at the Dodge County Detention Facility in Juneau, Wisconsin since his March 10, 2026 arrest. ECF No. 1 at 2, 8.

Returning to the habeas petition, Petitioner asserts that his detention violates the INA and the Due Process Clause. *See id.* at 13–20. Petitioner argues that the Government's release of Petitioner in 2021 under § 1226 estops it from now invoking mandatory detention under § 1225(b). *Id.* at 13. Petitioner also contends § 1225 cannot apply to his detention; instead, § 1226(a) governs his detention, which requires an individualized bond hearing. *Id.* at 19–20. In the alternative, Petitioner asserts that, even if § 1225(b) applies to him, his detention without a bond hearing violates the Due Process Clause of the Fifth Amendment. *Id.* at 20–21.

For relief, Petitioner asks this Court for "immediate release" from immigration detention, or a "prompt individualized bond hearing before an Immigration Judge." *Id.* at 31.[8]

---

[8]Petitioner also moved for a preliminary order restraining Respondents from transferring Petitioner to any facility outside the Eastern District of Wisconsin. *Id.* at 30–31. Federal Respondents agreed not to remove Petitioner from the United States or to move Petitioner outside of the Eastern District of Wisconsin, while this matter remains pending. ECF No. 5.

Case 2:26-cv-00600-JPS    Filed 06/25/26    Page 4 of 20    Document 10

**3.    ANALYSIS**

As a threshold matter, the Court has jurisdiction to address this petition. A federal court may grant habeas relief to a detainee who is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Generally, Congress has limited district court review of immigration decisions. *Padilla v. Gonzales*, 470 F.3d 1209, 1213 (7th Cir. 2006)); *see also* 8 U.S.C. § 1252(a)(5). However, a district court may entertain a § 2241 petition that challenges a petitioner's allegedly unlawful detention. *Rojas v. Olson*, No. 25-cv-1437-bhl, 2025 U.S. Dist. LEXIS 213983, at *7–11 (E.D. Wis. Oct. 30, 2025) (citing *Demore v. Kim*, 538 U.S. 510, 517 (2003); *Jennings v. Rodriguez*, 583 U.S. 281, 294–95 (2018)). Here, Petitioner challenges the legal basis for his detention; accordingly, this Court has jurisdiction to consider the merits of his petition.

This case requires the Court to consider legal issues that have been hotly debated across the country—provoking a circuit split and interpretive differences within this District.[9] After careful review of the arguments and the law, the Court decides for Respondents.

---

[9]*Compare Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026) (concluding "applicant for admission" and "seeking admission" are equivalent) *with Da Cunha v. Freden*, 175 F.4th 61 (2d Cir. 2026) (concluding § 1226(a) applies to foreign nationals already within the U.S. interior). *Compare Rojas v. Olson*, No. 25-cv-1437-bhl, 2025 U.S. Dist. LEXIS 213983 (E.D. Wis. Oct. 30, 2025) (finding § 1225(b)(2)'s mandatory detention applied to petitioner) *and Ugarte-Arenas v. Olson*, No. 25-cv-1721-WCG, 2025 U.S. Dist. LEXIS 252600 (E.D. Wis. Dec. 8, 2025) (same) *with De La Cruz v. Schmidt*, No. 25-cv-1562-LA (E.D. Wis. Nov. 19, 2025) (finding § 1226(a)'s discretionary release applied to petitioner), *Hernandez Herrerra v. Olson*, No. 25-cv-1994-NJ (E.D. Wis. Jan. 28, 2026) (same) *and Vela v. Schmidt*, No. 25-CV-2004-BBC, 2026 U.S. Dist. LEXIS 10716 (E.D. Wis. Jan. 21, 2026) (same).

### 3.1 Statutory Background

The Court begins with the statutes at issue, Sections 1225 and 1226, which govern the detention of foreign nationals[10] during removal proceedings.

Applicable to both statutes, "[a]pplicant for admission" means "an alien present in the United States who has not been admitted or who arrives in the United States." 8 U.S.C. § 1225(a)(1). The INA defines "admission" and "admitted" "with respect to an alien, [as] the lawful entry of the alien into the United States after inspection and authorization." 8 U.S.C. § 1101(a)(13)(A).

Section 1225(b)(1), titled "Inspection of aliens arriving in the United States and certain other aliens who have not been admitted or paroled," provides for expedited removal and mandatory detention for certain foreign nationals.

> If an immigration officer determines that an alien . . . who is arriving in the United States or is described in clause (iii) is inadmissible under section 1182(a)(6)(C) or 1182(a)(7) of this title, the officer shall order the alien removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum . . . or a fear of persecution.

8 U.S.C. § 1225(b)(1)(A)(i). The cross-referenced clause (iii) permits the Attorney General to apply 8 U.S.C. § 1225(b)(1)(A) to "any or all aliens described in subclause (II)," *id.* § 1225(b)(1)(A)(iii)(I); this clause is also called the Designation Provision. *Rodriguez-Acurio v. Almodovar*, 811 F.

---

[10]The INA defines "alien" as "any person not a citizen or national of the United States. 8 U.S.C. § 1101(a)(3). The Court uses the term "foreign national" as synonymous with the INA's term "alien."

Supp. 3d 274, 291 (E.D.N.Y. 2025) (citing *Make the Rd. N.Y. v. Wolf*, 962 F.3d 612, 618–19 (D.C. Cir. 2020) and *Coal. for Humane Immigrant Rts. v. Noem*, 805 F. Supp. 3d 48, 62 (D.C. Cir. 2025)). Subclause (II), in turn, provides:

> An alien described in this clause is an alien who is not described in subparagraph (F), who has not been admitted or paroled into the United States, and who has not affirmatively shown, to the satisfaction of an immigration officer, that the alien has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility under this subparagraph.

8 U.S.C. § 1225(b)(1)(A)(iii)(II).

Section 1225(b)(2), titled "Inspection of other aliens," mandates detention for certain foreign nationals. "[I]n the case of an alien *who is an applicant for admission*, if the examining immigration officer determines that an alien *seeking admission* is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a." *Id.* § 1225(b)(2)(A) (emphasis added). Section 1225(b)(2) "serves as a catchall provision that applies to all applicants for admission" not covered by subsection (b)(1). *Jennings*, 583 U.S. at 287.

By contrast, § 1226 provides for discretionary release. Under § 1226(a), during pending removal proceedings, the Attorney General may release a foreign national on bond with conditions. 8 U.S.C. §§ 1226(a)(1)–(2). At any time, the Attorney General may revoke a bond or parole and detain the foreign national. *Id.* § 1226(b). Section 1226 also provides that the Attorney General "shall" detain a foreign national who is inadmissible or deportable for committing certain crimes. *Id.* § 1226(c). The Laken Riley Act amended this subsection of the statute to mandate detention of foreign nationals arrested for "burglary, theft, larceny, shoplifting, or assault of a

law enforcement officer offense, or any crime that results in death or serious bodily injury to another person." *Id.* § 1226(c)(1)(E)(ii).

### 3.2 Section 1225 Governs Petitioner's Detention

Petitioner is properly detained under § 1225(b)(2)(A). First, considering the text of sections 1225 and 1226 and the INA as a whole, the Court finds no statutory basis to exclude Petitioner from the category of "applicants for admission" subject to mandatory detention under § 1225(b)(2)(A). Second, the doctrine of estoppel does not prevent the government from exercising this authority. Third, 8 U.S.C. § 1225(b)(1)(A)(iii)(II) has no bearing on Petitioner's detention under § 1225(b)(2)(A).

#### 3.2.1 Petitioner is an Applicant for Admission under the Plain Meaning of § 1225(b)(2)(A)

Under the plain meaning of the text, Petitioner meets the definition of "applicant for admission." Section 1225 defines "applicant for admission" as "an alien present in the United States who has not been admitted or who arrives in the United States[.]" 8 U.S.C. § 1225(a)(1). The INA defines "admission" and "admitted" as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). Petitioner did not enter the United States after inspection and authorization by an immigration officer. Petitioner is present in the United States and has not been admitted; therefore, he is an applicant for admission.

Petitioner argues that § 1225 mandates detention only for a category of foreign nationals actively "seeking admission" into the United States, while § 1226 governs those already in the country. ECF No. 1 at 10 (citing *Castañon-Nava v. DHS*, 161 F.4th 1048, 1061 (7th Cir. 2025) ("*Castañon-Nava*

*I*")). Petitioner asserts that he is not currently "seeking admission" within the meaning of § 1225. *Id.* at 17. Petitioner also argues that the Seventh Circuit has endorsed Petitioner's interpretation, and Respondents' interpretation would render the Laken Riley Act superfluous. *Id.* at 11, 18–19.

The Court disagrees with each of these arguments. First, "[a]n alien seeking admission" is equivalent to "an alien who is an applicant for admission." These terms are synonyms. The INA defines "applicant for admission," "admitted," and "admission," but does not define "seeking admission." *Avila v. Bondi*, 170 F.4th 1128, 1133 (8th Cir. 2026). "Thus, taking § 1225(a)(1) and (b)(2)(A) together, the central inquiry is whether an alien who is an 'applicant for admission' is also 'seeking admission' under § 1225(b)(2)(A)." *Id.* In ordinary usage, the terms mean the same thing—someone who is an applicant for admission seeks admission. *See Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 503 (5th Cir. 2026). The surplusage canon does not prevent Congress from using synonyms. *Avila*, 170 F.4th at 1135 (citing *Tyler v. Cain*, 533 U.S. 656, 664 (2001) and *Hibbs v. Winn*, 542 U.S. 88, 101 (2004)). And "there is 'no canon of interpretation that forbids interpreting different words used in different parts of the same statute to mean roughly the same thing.'" *Buenrostro-Mendez*, 166 F.4th at 503 (quoting *Jennings*, 583 U.S. at 303). Here, "the natural reading is also the most convincing." *Castañon-Nava v. DHS*, 175 F.4th 828, 874 (7th Cir. 2026) (Kirsch, J., dissenting) ("*Castañon-Nava II*").

In *Buenrostro-Mendez,* the Fifth Circuit employed this analogy:

> Just as an applicant to a college seeks admission, an applicant for admission to the United States is "seeking admission" to the same, regardless [of] whether the person actively engages in further affirmative acts to gain admission. The everyday

> meaning of the statute's terms confirms that being an "applicant for admission" is not a condition independent from "seeking admission."

166 F.4th at 502. The Second Circuit critiqued this analogy to everyday parlance, because "applicant for admission" is a defined term. *Da Cunha v. Freden*, 175 F.4th 61, 74 (2d Cir. 2026). The Second Circuit instead offered this:

> If someone sneaks into Yankee Stadium at the start of the game with no ticket for admission (and no intention of ever paying) and he is later found by security in a seat in the seventh inning, no one would consider that fan to be "seeking admission" to the game.

*Id.* at 76. Fair enough. But what if, as is the case here, the "gatecrasher" seeks to remain through the ninth?

The Court finds both analogies helpful for interpreting the plain meaning of the words used by Congress. "Applicant for admission" is a defined term, and it also has an ordinary meaning. "[W]e typically expect the meaning of a definition to be 'closely related to the ordinary meaning of the word being defined.'" *Castañon-Nava II*, 175 F.4th at 873 (Kirsch, J., dissenting) (quoting ANTONIN SCALIA & BRYAN A. GARNER, READING LAW 228 (2012) and citing *Delligatti v. United States*, 604 U.S. 423, 435 (2025)). "We need not abandon all reference to the ordinary meaning of applicant for admission, and so what we have here is a term of art that is synonymous with an undefined term—alien seeking admission. The law says that an alien present in the United States who has not been admitted or who arrives in the United States is an applicant for admission, 8 U.S.C. § 1225(a)(1), and applicants for admission are seeking admission." *Id.* (Kirsch, J., dissenting) (citing *Buenrostro-Mendez*, 166 F.4th at 503; *Avila*, 170 F.4th at 1134).

The Court's interpretation does not conflict with binding precedent, as to date there is none on this question. While the Seventh Circuit has analyzed the interpretation of § 1225, it did not reach binding consensus on this question. *See Castañon-Nava II*, 175 F.4th at 858 (Pryor, J., concurring in part).[11]

This interpretation does not render the Laken Riley Act superfluous. "[T]he Laken Riley Act 'was aimed at making sure that certain aliens, whom Congress deemed dangerous, were necessarily detained pending their removal, whether they were lawfully admitted or not, lest they commit further crimes while released.'" *Ugarte-Arenas v. Olson*, No. 25-cv-1721, 2025 U.S. Dist. LEXIS 252600, at *11 (E.D. Wis. Dec. 8, 2025) (quoting *Rojas*, 2025 U.S. Dist. LEXIS 213983, at *9). "Nothing in the Laken Riley Act suggests any Congressional thoughts concerning the issues presented in this case." *Rojas*, 2025 U.S. Dist. LEXIS 213983, at *9. Section 1226(c) "applies more broadly than § 1225(b)(2)(A), carries with it distinct parole consequences, and in short 'applies a different set of penalties to a broader group of aliens' than § 1225(b)(2)(A)." *Castañon-Nava II*, 175 F.4th at 876–77 (Kirsch, J., dissenting) (quoting *Avila*, 170 F.4th at 1137). To the extent this interpretation creates overlap "with § 1225, '[r]edundancy in one portion of a statute is not a license to rewrite or eviscerate another portion of the statute contrary to its text.'" *Avila*, 170 F.4th at 1137 (quoting *Barton v. Barr*, 590 U.S. 222, 239 (2020)).

---

[11]Other courts have also acknowledged that the Seventh Circuit has not yet issued binding precedent on this question. *See, e.g.*, *Lopez-Campos v. Raycraft*, 175 F.4th 713, 722 (6th Cir. 2026); *Hernandez Herrera, v. Olson*, No. 25-CV-1994, 2026 WL 1602258, at *1 (E.D. Wis. June 4, 2026); *Flores v. Edwards*, No. 26-CV-96-WMC, 2026 WL 1480378, at *2, n.4 (W.D. Wis. May 27, 2026).

For the foregoing reasons, the Court finds that "an alien seeking admission" is equivalent to "an alien who is an applicant for admission," and Petitioner is an applicant for admission. Accordingly, § 1225(b)(2)(A) governs Petitioner's detention.

### 3.2.2 Respondents' Prior Conduct Does Not Estop Their Interpretation

Petitioner argues that the Federal Respondents' interpretation "is foreclosed by [the Government's] own prior conduct" because DHS released Petitioner in 2021 on an order of recognizance under 8 U.S.C. § 1226(a)(2)(B) and arrested Petitioner in March 2026 under a warrant that cited § 1226. ECF No. 1 at 9–10. Petitioner asserts that the Form I-220A Order of Recognizance "expressly invokes 'section 236 of the INA' as the basis for *his release* as a substantive order directed to him personally," and "cannot be recharacterized as mere boilerplate authority language." *Id.* at 25 (emphasis in original). Petitioner also asserts that the change in interpretation creates a problem under *SEC v. Chenery Corp.*, 318 U.S. 80 (1943), because "an agency must defend its actions on the reasons it gave when it acted." *Id.* at 14 (citing *DHS v. Regents*, 591 U.S. 1, 24 (2020)).

Federal Respondents only briefly oppose Petitioner's argument on these points: "But off-hand (and often outdated) references made on standard form documents do not somehow bind the government as to its present or future actions. *See Paredes Padilla v. Galovich*, No. 25-CV-865-JDP, 2025 WL 3640960, at *3-4 (W.D. Wis. Dec. 16, 2025) (rejecting petitioner's argument that reference made to § 1226 on an arrest warrant requires that his detention be governed by that section)." ECF No. 9 at 9. Because this is one of many pending habeas petitions based on the same questions of law,

the Court will not grant the petition based merely on Respondents' failure to respond to this argument in more depth.

In any event, the Court finds Petitioner's argument unpersuasive because § 1225 and § 1226 are not mutually exclusive. "[N]othing in the plain text of Sections 1225 and 1226 suggests that the mandates and procedures in these sections are mutually exclusive. They merely overlap." *Demir v. Noem*, No. 2:26-cv-00086-JRO-MKK, 2026 U.S. Dist. LEXIS 52225, at *15 (S.D. Ind. Mar. 13, 2026). "[T]he INA contains a general provision—the Attorney General may release most ICE arrestees on bond, 8 U.S.C. § 1226(a)—and a specific provision—every 'applicant for admission' must be detained without a bond hearing, 8 U.S.C. § 1225(b)(2)(A). The specific is the exception to the general, and it applies to Petitioner in this case." *Id.* at *16 (citing *Rodriguez v. Olson*, 814 F. Supp. 3d 945, 958 (N.D. Ill. Jan. 8, 2026) and *Ayala v. Harper*, No. 1:26-cv-204-CLM-GMB, 2026 U.S. Dist. LEXIS 36350, at *22 (N.D. Ala. Feb. 23, 2026)).

Further, the arrest warrant's reference to "any immigration officer authorized pursuant to sections 236 and 287 of the [INA] and part 287 of title 8, Code of Federal Regulations" does not bind the government to a particular interpretation of the law. ECF No. 1-3 at 2. "[W]hether a non-citizen was arrested pursuant to a warrant is not an element in determining whether a non-citizen's detention is governed by § 1225 or § 1226. If it were, that would undermine the mandatory detention scheme imposed by § 1225, because immigration officials could avoid the mandatory detention requirement by simply issuing a warrant before arresting someone who would otherwise be subject to mandatory detention." *Paredes Padilla*, 2025 U.S. Dist. LEXIS 260946, at *10. Furthermore, the Government's past practice does not bind future administrations to an incorrect interpretation

of the law. *Castañon-Nava II*, 175 F.4th at 877 (Kirsch, J., dissenting) (citing *Rust v. Sullivan*, 500 U.S. 173, 186 (1991) ("An agency is not required to establish rules of conduct to last forever."); *Int'l Ass'n of Bridge, Structural & Ornamental Iron Workers, Local 3 v. N.L.R.B.*, 843 F.2d 770, 776 (3d Cir. 1988) (agency interpretations are not "frozen in concrete")). "'[T]he longstanding practice of the government—like any other interpretive aid—can inform a court's determination of what the law is,' but cannot 'supersede' judicial judgment." *Id.* (quoting *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 386 (2024)).

Facing a similar argument, Judge Brett H. Ludwig, another jurist in this District, likened this reasoning to estoppel, and found that it did not apply here. There too, "[Petitioner] want[ed] to preclude ICE from adopting a new, different interpretation based on its past practice. But there is no estoppel against the federal government." *Rojas*, 2025 U.S. Dist. LEXIS 213983, at *26) (citing *Off. of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 420 (1990) and *Gutierrez v. Gonzales*, 458 F.3d 688, 691 (7th Cir. 2006)); *Richmond*, 496 U.S. at 420 ("From our earliest cases, we have recognized that equitable estoppel will not lie against the Government as it lies against private litigants."); *Gutierrez*, 458 F.3d at 691 ("The Supreme Court has *never* affirmed a finding of estoppel against the government.") (emphasis in original)); *see also Paredes Padilla*, 2025 U.S. Dist. LEXIS 260946, at *7 ("[T]hat [petitioner] was no longer in expedited removal proceedings when he was re-arrested . . . doesn't change that his detention has been, and remains, mandatory."). The Court must apply the statute as it is written.

Sections 1225 and 1226 overlap; therefore, language on the Form I-220A or arrest warrant does not bind the government to a particular

interpretation of the statutes. Federal Respondents' prior conduct does not prevent them from detaining Petitioner under § 1225(b)(2)(A).

### 3.2.3 The Court Lacks Jurisdiction to Individually Review an Expedited Removal Designation

Petitioner argues that expedited removal under § 1225(b)(1)(A) cannot apply to him. ECF No. 1 at 15. Petitioner asserts that "[t]he INA itself bars expedited removal of a noncitizen who has been continuously present for two years." ECF No. 1 at 16 (citing 8 U.S.C. § 1225(b)(1)(A)(iii)(II)). Again, Respondents do not address the substance of Petitioner's point here. *See generally* ECF No. 9. Because this is one of many pending habeas petitions based on the same questions of law, the Court will not grant the petition based merely on Respondents' failure to respond to this argument but will instead analyze Petitioner's argument.

Here, the Court understands Petitioner to invoke 8 U.S.C. § 1225(b)(1)(A)(iii)(II) to challenge his expedited removal. *See* ECF No. 1 at 15–17. In Count Two, Petitioner asserts that "expedited removal under § 1225(b)(1) is categorically unavailable and was never initiated." *Id.* at 15. To the extent that Petitioner requests an individual determination regarding whether § 1225(b)(1) applies to him, the Court lacks jurisdiction to entertain that claim under the INA's jurisdiction-stripping provisions.

Under the INA's jurisdiction-stripping provisions, district courts cannot review the applicability of § 1225(b)(1) to individual foreign nationals' expedited removal proceedings. 8 U.S.C. § 1252(a)(2)(A). Relevant here, subsection (i) provides that no court shall have jurisdiction to review "any individual determination or to entertain any other cause or claim arising from or relating to the implementation or operation of an order of removal pursuant to section 1225(b)(1) of this title." *Id.*

§ 1252(a)(2)(A)(i). The statute creates three exceptions. In habeas proceedings, district courts can review: (A) whether the petitioner is an alien; (B) whether the petitioner was ordered removed under the expedited removal section; and (C) whether the petitioner is lawfully admitted for permanent residence, has been admitted as a refugee, or has been granted asylum. *Id.* § 1252(e)(2); *Cabrera v. DHS*, No. 24-3079, 2025 U.S. App. LEXIS 7988, at *3 (7th Cir. Apr. 4, 2025) (unpublished). Petitioner has not argued that an exception to the jurisdiction-stripping provisions applies here. The Court lacks jurisdiction to consider a challenge to Petitioner's expedited removal.

To the extent that Petitioner invokes 8 U.S.C. § 1225(b)(1)(A)(iii)(II) to challenge his mandatory detention, the Government has detained Petitioner under § 1225(b)(2), not § 1225(b)(1). Section 1225(b)(1)(A)(iii) enumerates a distinct category of foreign nationals eligible for expedited removal. Under § 1225(b)(1),

> Noncitizens who satisfy two criteria may be subject to expedited removal. First, those noncitizens are "inadmissible" to the United States . . . Second, those noncitizens fall into at least one of two provisions of the expedited removal statute: (1) they "[are] arriving in the United States[,]" 8 U.S.C. § 1225(b)(1)(A)(i), and thereby fall into what is known as the "Arriving Aliens Provision"; and/or (2) they "have not been admitted or paroled" into the United States and have "not affirmatively shown" to an immigration officer's satisfaction that they have been "physically present in the United States continuously for [a] 2-year period immediately prior to the date of the determination of inadmissibility[,]" *id*.§ 1225(b)(1)(A)(iii)(II), and thereby fall into what is known as the "Designation Provision." *See Make the Rd[.]*, 962 F.3d at 618-19; *Coalition*, 2025 U.S. Dist. LEXIS 148615, 2025 WL 2192986, at *5. The expedited removal statute grants the Attorney General the authority to designate the

population of noncitizens who fall under the Designation Provision. 8 U.S.C. § 1225(b)(1)(A)(iii). The Attorney General has since delegated that authority to the Secretary of DHS. *Make the Rd.*, 962 F.3d at 619 & n.1.

*Rodriguez-Acurio v. Almodovar*, 811 F. Supp. 3d 274, 291 (E.D.N.Y. 2025); *see also Rivera v. Blanche*, No. 2:26-cv-03892 (BRM), 2026 U.S. Dist. LEXIS 93945, at *5 (D.N.J. Apr. 29, 2026). Unpublished Seventh Circuit guidance supports this interpretation: "Section 1225(b)(1)(A)(iii)(II) does not define the term 'alien'; it merely designates one category of persons who will be subjected to expedited removal." *Cabrera*, 2025 U.S. App. LEXIS 7988, at *4. Petitioner has not explained how the Designation Provision undermines his detention under § 1225(b)(2).

The Court finds that 8 U.S.C. § 1252(a)(2)(A) strips it of jurisdiction to review a claim "arising from or relating to the implementation or operation of an order of removal pursuant to section 1225(b)(1) of this title." To the extent Petitioner invokes this subsection to challenge his detention, the Designation Provision does not impact Petitioner's detention under § 1225(b)(2).

### 3.3 Petitioner's Detention Does Not Offend Due Process

Petitioner contends that, even if § 1225(b) governs his detention, "prolonged detention without any individualized hearing raises an independent constitutional question." ECF No. 1 at 12, 20–21 (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)). Federal Respondents contend that removal proceedings provide Petitioner with the process he is due and, after *Zadvydas v. Davis*, 533 U.S. 678, 702 (2001), detention during removal proceedings has generally withstood due process challenges in the

Supreme Court. ECF No. 9 at 9, 11 (citing *Jennings*, 583 U.S. at 323; *Demore*, 538 U.S. at 523; *Wong Wing v. United States*, 163 U.S. 228, 235 (1896)).

Under *Mathews*, the Court must evaluate three factors to determine whether the government has taken an individual's life, liberty, or property without due process. "The Court must consider (1) the private interest affected by the government action; (2) the risk that current procedures will cause an erroneous deprivation of that private interest, and the extent to which that risk could be reduced by additional safeguards; and (3) the government's interest in maintaining the current procedures, including the governmental function involved and the fiscal and administrative burdens that the substitute procedural requirement would entail." *Rojas*, 2025 U.S. Dist. LEXIS 213983, at \*33–34 (citing *Mathews*, 424 U.S. at 335).

Applying this standard to detention during removal proceedings in *Parra v. Perryman*, the Seventh Circuit defined the private interest not as "liberty in the abstract, but liberty *in the United States* by someone no longer entitled to remain in this country[.]" 172 F.3d 954, 958 (7th Cir. 1999) (emphasis in the original). Here, the risk that current procedures will cause an erroneous deprivation of Petitioner's interest is minimal because, as explained above, Petitioner's detention is mandatory. Lastly, the government has a "powerful interest in maintaining the detention in order to ensure that removal actually occurs." *Id.*

Petitioner contends that *Parra* is inapposite because "an alien in Parra's position can withdraw his defense of the removal proceeding and return to his native land, thus ending his detention immediately. He has the keys in his pocket." *Id.* But Petitioner cannot accept removal to Venezuela. ECF No. 1 at 22. The keys are not in Petitioner's pocket. It is true that post-removal period detention with no foreseeable end date violates the Due

Process Clause. *Zadvydas*, 533 U.S. at 702. But here, unlike in *Zadvydas*, Petitioner's removal proceedings remain ongoing at this juncture and his detention has an end in sight.

Petitioner maintains a "recognizable liberty interest in connection with his pre-removal detention." *Rojas*, 2025 U.S. Dist. LEXIS 213983, at *39. "But as *Demore* held, and *Parra* explains, that liberty interest is limited. [Petitioner] is an alien who was found in the United States without authorization and is subject to removal proceedings. Consistent with federal law, he is being provided with the opportunity to oppose removal and using that opportunity to pursue an asylum claim." *Id.* at *39–40 (internal citation omitted). Accordingly, Petitioner's detention does not offend due process.

### 4. CONCLUSION

For the reasons stated herein, Sosa-Vasquez's petition for a writ of habeas corpus will be denied and this case will be dismissed. Sosa-Vasquez's statutory claims will be denied with prejudice. Sosa-Vasquez's due process claim will be denied without prejudice because he could plausibly challenge the duration of his detention in the future under *Zadvydas*.

Rule 11 of the Rules Governing Section 2254 Cases—which this Court may apply to § 2241 cases, *see* Rule 1(b), Rules Governing Section 2254 Cases—requires the Court to either issue or deny a certificate of appealability in all cases where it enters a final order adverse to the petitioner. Such a certificate should only be issued where the petitioner has made a substantial showing of the denial of a constitutional right by establishing "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different

manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks and citation omitted).

Here, reasonable jurists could debate whether the petition should have been resolved in a different manner. Accordingly, the Court grants Petitioner a certificate of appealability.

Accordingly,

**IT IS ORDERED** that Petitioner Isaac Eduardo Sosa-Vasquez's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, ECF No. 1, be and the same is hereby **DENIED** as specified; Counts One through Four be and the same are hereby **DENIED with prejudice**; Count Five be and the same is hereby **DENIED without prejudice**;

**IT IS FURTHER ORDERED** that a certificate of appealability as to Petitioner Isaac Eduardo Sosa-Vasquez's petition be and the same is hereby **GRANTED**; and

**IT IS FURTHER ORDERED** that this case be and the same is hereby **DISMISSED.**

The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 25th day of June, 2026.

BY THE COURT:

J. P. Stadtmueller
U.S. District Judge